Good morning and welcome to the Ninth Circuit. Judge Fletcher and I are very happy to welcome our colleague Judge Bennett from the District of Maryland. He's sitting with us by designation and has sat before, so we welcome you back. My privilege is always an honor. Thank you. The first two cases are submitted on the brief, so we'll hear argument first in United States v. Nickalaskey. You may proceed. Good morning, your honors. May I begin? You may. Okay. Attorney Mondew for Mr. Nickalaskey. In order for this court to affirm the district court's denial of the motion to suppress, this court will look at the totality of the circumstances and the reasonableness of the suspicion of the person, a particular person, stopped. And in this case, the district court, without Mr. Nickalaskey having a hat on, which was certainly part of the specifics from the informant, without that, the district court took what pretty much amounts to judicial notice that hats can go on and go off. And while that may be true, that does not mean, without any evidence of a hat, without the officers ever looking for or finding a hat, that Mr. Nickalaskey had a hat on. You know, if I can maybe throw a curveball here, I listened to the call and I looked at the video. Not only does he not have a hat, the call very clearly says a dark beard and mustache. And Mr. Nickalaskey did not have a dark beard and mustache. He apparently had some facial hair that's light that's hardly visible in the video. So I think the description does not match your client. On the other hand, the call says there are two people. There's a runner with a dark beard, scruffy and so on, with a hat, and there's a driver. Well, your client was standing next to the truck. I suspect he was the driver. So why isn't there a reasonable suspicion to arrest him as the driver? Because number one, the confidential informant never gave a description of what this driver looked like. He used the word guy, keeps driving him around. However, some guys can look like women, some women can look like guys. But on the other hand, we've got the truck, the license plates are mixed up, but we got the truck that matches one of the license plates. He's standing right next to the truck, which gives, I think, a reasonable basis to guess that he's the driver of the truck. Why isn't that enough? Well, in United States v. Brown, which I cited in a 28-J letter, sitting on a wall was not suspicious, not illegal, didn't provide those officers with any suspicion. And standing next to a vehicle could be by whether he was standing next to the had borrowed it, or he was standing next to the vehicle because he wanted a ride. We'll never know because the government never produced any information from the real owner, whether he loaned the truck to Mr. Nicoloski, whether it was stolen. Would that matter? I mean, at that point, that's not what we're looking at, is it? I mean, we have a suspected drug deal going down. We have two guys that we observed, and then we have the truck that matches. What more do you need at that point? You need... That's reasonable suspicion, isn't it? No, I disagree. The reasonable suspicion had to be based on... Well, what the officers learned were historical facts. It wasn't anything that was occurring at the time they absorbed Mr. Nicoloski standing by the truck. They didn't take the time to, like the magistrate judge said, they put the show of authority first, and then obtained what they believed was reasonable suspicion that he was attempting to flee, simply because he was looking back and forth between the cruisers parked behind him. At that point, without a hat, without knowing Mr. Nicoloski had driven the car, which is pretty much the thing in Vandergroen, which the government relies on. In Vandergroen, three patrons described a man with a gun wearing a blue sweater, Latino-looking, who left that establishment they were at, ran to another one, then came out and got in a black Crown Victoria and took off. In that case, when the police apprehended him, he was wearing the blue sweater that they described with warriors on it. He was in the car they described. Reasonable suspicion that was him? Yes. In this case, the government is trying to put Mr. Nicoloski in the car without ever having seen him in the car or described in the car, because there was no description of the driver, and he didn't fit the description of the runner. So Vandergroen certainly does not help the government at all. And as far as a district court relying on what is tantamount to judicial notice that hats go on and off to find Mr. Nicoloski had to have had a hat on, that was found to be error in Maryskull. And even though that really was based on the statute needing, based on her, based on the judge saying that there was traffic on the highway, even though there wasn't, or the roadway, that was found to be error. And certainly placing a hat on Mr. Nicoloski without ever looking for the hat, anybody seeing him with the hat, his beard did not disappear either. Your Honor, the reasonable suspicion doesn't rise to the... But could you come back to my suspicion that, in fact, this is not at all the guy with the hat and the dark beard, but rather the driver? And given the information available to the officers that there are two people, there's a driver and there's a runner, and the runner is described as having a hat and a dark beard, why is it not reasonable suspicion when they come upon someone who appears to be the driver of the truck? I don't see what evidence there was that he was the driver. Well, he's standing beside the truck with the door open. Obviously, he's either the owner of the truck, associated with the truck, maybe stealing from the truck, but he's clearly tied to the truck. And we've got a tipster who gives his name, who says there are two people, one's driving around and they're doing up to some mischief. He thinks it's drug dealing. I suspect, given the rap sheet of Mr. Olasky, it was not drug dealing, but rather stealing from cars, but that's neither here nor there. So why is there not reasonable suspicion that he's the driver? Because standing next to the vehicle, even though the vehicle was consistent with the tip, Mr. Nicolasky wasn't. He could have been there for any reason. And while this is not the venue to explore other reasons, I'm bound by what counsel below argued or didn't argue or admit or didn't admit. Just standing by the truck alone does not place Mr. Nicolasky in the driver's seat. And we know that there was... Well, that may be true, that alone, but we have more than that alone, as Judge Fletcher pointed out. If all we had was a guy standing next to a truck, we wouldn't have anything. But we have the tip and we have all the other indicia, so I have a little trouble characterizing it as police drive up, guy is standing next to a truck. Do they have reasonable suspicion? Well, the answer to that would be no. But you have a different scenario. There was a sufficient amount of information supplied, was there not, in terms of potential illegal activity by a group of people, not just one driver. Isn't that correct? In Vandergrohen? Yes. No, I mean in the facts of this case. In the facts of this case. There was... Well, there had to be two people. Sure. If one was driving and one was jumping out. Right. But as far as placing him, his placement next to the truck, the magistrate judge also surmised if he had been loading groceries in the Ranger, it may have been different, but that was with the same truck and the same clothing. So it was the fact that they stopped before they even knew what this person looked like by the truck. They blocked him in. You want to save your remaining time for rebuttal? Would you like to save your remaining time for rebuttal? Yes, Your Honor. We'll hear from the government. Thank you, Your Honor. May it please the court, my name is Jennifer Ivers. I represent the government in this matter. It seems, based on the panel's questions so far, that this is a question of reasonable suspicion in the totality of the circumstances. And there's no case that says that the 911 caller or the police have to be perfectly correct about everything that they report or every conclusion that they draw about what they're seeing. Am I correct that the government all along has argued that the description with the hat and the dark beard is a description of Mr. Nicolasky? Yes, that's been our position. The 911 caller described the runner as a, quote, he was wearing. Well, no, it's not. The problem is it's not consistent. He's not wearing a hat. And of course, I take the point the hat could come off. But he does not have a dark beard and mustache. I mean, I've seen a picture of him in the video. He does not have a dark beard and mustache. Apparently, he has some facial hair, but it's so light, it doesn't even show up in the video. Right. He's got sort of reddish facial hair. And he was scruffy looking, I think is accurate. But no, he doesn't have like a thick dark beard. My question is, can you salvage your case by now arguing that Mr. Nicolasky is not the runner, but the driver? And there was reasonable suspicion that he was the driver, even though that's not the argument that you made below. Apparently not the argument you're so far making today. Well, I think the fact is, it doesn't matter, right? The reasonable suspicion is based on the totality of the circumstances. It's that, you know, based on the testimony in the evidentiary hearings, it sounds like the officers also believe that Mr. Nicolasky was the runner. They saw him standing next to the open door of the white pickup truck, as your honor pointed out, the same license plate given by the 911 caller. Although the truck was running. Although the license plate matches not that car, not that truck, but the other car matches the Saturn. Well, and the dispatcher, before police even arrived in the parking lot, the dispatcher had corrected the 911 callers switching of the license plates and had notified the officers of the correct license plates for the Ranger and the black Saturn. So that had been corrected before officers even arrived. So they knew that this was the right truck with the right license plate. The door was open. Mr. Nicolasky was standing in the open door. And so based on the totality of the circumstances, as officers walked up, they had reasonable suspicion. And so I think the report's cases focus on how much weight do we put on what this 911 caller says, considering things like, did they call a recorded 911 line? You know, did they, were they named? Were they reporting eyewitness knowledge? How much detail did they give? How recently had this happened? Whether they, what they were reporting sounded like a crime or not, you know, can't just be suspicious activity. It has to be something that indicates that a crime was possible. Going back to Judge Fletcher's question on a de novo review on the motion to suppress, does it matter which individual the officers thought in terms of their reasonable suspicion? Or is it a more abstract whether there would be reasonable suspicion by a reasonable officer? No, I mean, the reasonable suspicion is, it doesn't require this court necessarily to peer into the minds of the officers, although we have good indication of what they were thinking at the time. But on de novo review, this court looks at the totality of the facts known to police at that time. And under, based on those facts, you know, this call was reliable and reliably pointed to Mr. Nikoloski as someone suspected of criminal activity. And like I mentioned before, there's been no case that says, you know, every single thing has to be correct. For instance, the suspicion was, you know, maybe there was drug dealing going on here. That's what it sounded like to the officers. And Officer Hostetter has been working this patrol area. He gets a lot of calls to this particular parking lot, and a lot of them relate to drug dealing. And so that seems to be the primary suspicion by the 911 caller and the officer. And whether they were right or not, you know, that isn't really part of the totality of the circumstances. It's, you know, what information they have as they're walking up to Mr. Nikoloski. Well, that brings me to another question. In terms of your calculus of totality of the circumstances, you reference in your brief the high crime area. Is that segment or that component of totality of the circumstances necessary here to reach reasonable suspicion? I think all of the other facts rise to the level of reasonable suspicion, even without that. But it certainly adds, and I think, you know, we should be clear, you know, a high crime area, if that was the only fact here, that would not be enough. But that's on top of all these other facts that police have learned from the names 911 caller. The fact that there's a high crime area and the fact that this is a high crime area, I mean, that's another factor for the officers to consider as they're approaching and for this court to consider. And that is something that should be considered. There was specific testimony that this particular parking lot, and we're not talking about, you know, a whole neighborhood. We're talking about a particular parking lot that these police know to be a hub of crime, including drug activity. And so that should be considered. I don't think that has to be. If this were another parking lot, I think officers were that wasn't a high crime parking lot, I think officers would still have reasonable suspicion to approach Mr. Nikoloski, start asking him questions. And then, you know, and this is a pretty quick turnaround. You know, I'm glad that the panel has reviewed the video. You can see, you know, it's not long after officers start asking Mr. Nikoloski questions that they develop reasonable suspicion that he's armed. And shortly after they decide to patch search him is when he starts to fight them. They go to the ground and he pulls out a loaded gun and tries to shoot it. So this is this is all happening very and. The record does reflect the record does reflect, does it not, that in terms of the subversive activity, there was also patterns of walking in between the cars, which was indicia of drug dealing out of the sight of others. Isn't that in the record as well? Yeah, well, the 911 caller said that he saw the runner walking from the ranger to other cars and back. And hopping in between cars, apparently a pattern of activity going in between the park cars. Is that not in the record as well? I believe it is. Is it not? That's that sounds right. And that's consistent with how Mr. Nikoloski. Sounds right or is right. I don't think sounds right gets you too far under the reasonable suspicion. I I don't recall that specific detail of the 911 call from from as I'm sitting here today. I think what I recall is walking back and forth to cars throughout the parking lot and then driving around the parking lot to different places which they had done again between the time that the 911 caller um made the call and when police arrived the vehicle the the Ford had moved to a different part of the parking lot um and again police were able to identify it by its license plate and by matching the description given by um the caller so based on the totality of the circumstances you know officers as as they pulled up they knew that there had been two individuals in this car one had been getting out and running over to other cars in a way that seems like potentially drug activity or potentially some kind of stealing um they knew that there was a names 911 caller who gave a detailed description of the runner um and they knew that it was a high crime area and so as they approached Mr. Nikoloski they had reasonable suspicion. Thank you. Well you're down to a few seconds it would be hard to say anything so I would like to put a minute back on the clock please. Reasonable suspicion cannot be based finding Mr. Nikoloski was the driver simply because he was standing by the car without ever knowing any evidence did he just get there momentarily where was he before how long was he standing by that car what did the driver look like was the driver male female young old and it's pretty ironic that the driver and the uh runner both had scruffy clothes with the question of is the question is he a male uh is at least is at least implicitly he gave no excuse me just a minute you're having trouble hearing me the question is whether he's a male or female is at least implicitly answered by the text of the 911 call because the 911 call says they are kind of wandering around though they are dealing drugs or something in there he's got a guy running around says that tell I mean so if he's accurate with the use of the pronoun the driver is a male well we don't know how close he was we don't know whether a female has her hair up under a baseball hat oh no no no I know I get that but the caller says it's a male well the caller didn't remain behind to verify it either like in van van der groen thank you thank you your honor yes thank you I'd like to thank both counsel case just argued of United States versus Nikoloski is submitted
judges: McKEOWN, FLETCHER, Bennett